UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

Steven C. Russell
& Julia W. Russell,

Debtors

Chapter 13
Case No. 22-10083

## ORDER OVERRULING OBJECTIONS TO CLAIMS

The question in this contested matter is whether a creditor's failure to respond to a request for a copy of a revolving consumer credit agreement under Fed. R. Bankr. P. 3001(c)(3)(B) should result in disallowance of that creditor's claim. For their part, the debtors argue that such a failure renders the creditor's claim unenforceable and, as a result, subject to disallowance. Because this argument is unpersuasive, the debtors' objections to claims are hereby overruled.

The debtors have objected to three proofs of claim filed by Synchrony Bank. *See* [Dkt. Nos. 20, 21, and 22]. Several undisputed facts provide context for the objections. First, the debtors listed three claims held by Synchrony as debts on their Schedule E/F in amounts that are nearly identical to the amounts on the proofs of claim filed by Synchrony and the debtors did not indicate that any of the debts were in dispute. [Dkt. No. 1.] Second, the debtors concede that Synchrony's proofs of claim were filed prior to the bar date. Third, each of the proofs of claim was completed using the Official Proof of Claim Form, was executed by an agent of Synchrony, and was accompanied by both the itemized statement required by Fed. R. Bankr. P. 3001(c)(2)(A) and the statement required by Fed. R. Bankr. P. 3001(c)(3)(A). Fourth, each of Synchrony's claims is based on a revolving consumer credit agreement: each is a claim arising out of the debtors' use of a credit card. Finally, in their objections to Synchrony's claims, the

debtors requested copies of their revolving consumer credit agreements under Rule 3001(c)(3)(B). The debtors have alleged—and Synchrony has not disputed—that Synchrony never provided those documents. The debtors have also alleged that they have made numerous attempts to contact Synchrony and have received no response to their calls or emails. Synchrony did not respond to the claim objections or appear at either of the hearings on the objections.

The Bankruptcy Code provides a mechanism by which a creditor may assert a right to payment in a bankruptcy case. *See* 11 U.S.C. § 101(5)(A) (defining "claim" to include a "right to payment"). A creditor may assert a claim in a bankruptcy case by filing a proof of claim. 11 U.S.C. § 501(a). When a proof of claim is filed under section 501, the claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "But even where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007) (quoting 11 U.S.C. § 502(b)). The first of those nine exceptions provides that a claim is not to be allowed if it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(b)(1).

The Supreme Court has recognized the statutory presumption that "claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed" under section 502(b). Travelers, 549 U.S. at 452. In Travelers, the Court vacated a judgment disallowing a claim for attorney fees based on a common law rule—the "so-called Fobian rule"—that found "no support in the Bankruptcy Code, either in § 502 or elsewhere." Id. at 451-52. Because the claim for attorney fees did not fit within section 502(b)(2)-(9), the Court's analysis centered on section 502(b)(1). Id. at 449-50. The Court interpreted section 502(b)(1) to

render a claim unenforceable in bankruptcy to the extent that the claim was unenforceable as a matter of applicable nonbankruptcy law.  Id. at 450-51.  The Fobian rule did not qualify as "applicable" law for purposes of section 502(b)(1) because it was not based on nonbankruptcy law (or on any provision of the Bankruptcy Code) but was instead based on Ninth Circuit caselaw.  Id. at 451-52.  The Court deemed "the absence of textual support" in the Code "fatal for the Fobian rule."  Id. at 452.

Sections 501 and 502 are complemented by Fed. R. Bankr. P. 3001, which provides "the procedural framework for the filing and allowance of claims" and "regulate[s] the form, content, and attachments for proofs of claim."  Am. Express Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 503 (B.A.P. 1st Cir. 2009).  Rule 3001 also implements a burden shift with respect to allowance of a claim, proof of which is executed and filed in accordance with the rules:  such a proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).  Once presumptive validity is established, the burden rests on the debtor to refute the validity or the amount of the claim with "substantial evidence."  Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993).

As for supporting documentation, in general, when a claim is based on a writing, a copy of the writing must be filed with the proof of claim.  Fed. R. Bankr. P. 3001(c)(1).  However, there is an exception to this rule: when a claim is based on an open-end or revolving consumer credit agreement, a copy of the agreement need not be filed with the proof of claim.  Fed. R. Bankr. P. 3001(c)(1), (3)(B).  Instead, the holder of such a claim must provide a copy of the credit agreement upon request within 30 days after a party in interest makes a request.  Fed. R. Bankr. P. 3001(c)(3)(B).

The consequences of failing to comply with Rule 3001(c) are spelled out in the rule:

> If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:
> (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
> (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3001(c)(2)(D). The advisory committee's note to Rule 3001(c) expressly states that "[f]ailure to provide the required information [under Rule 3001(c)] does not itself constitute a ground for disallowance of a claim." Fed. R. Bankr. P. 3001(c) advisory committee's note to 2011 amendment (citing section 502(b)). This Court has previously ruled, in a manner consistent with Travelers and the advisory committee's note, that section 502(b) "enumerates the exclusive grounds for disallowance of a claim, and failure to file documentation [under Rule 3001(c)] is not among them." In re Castle Builders, Inc., No. 19-10534, 2021 WL 366774, at *2 (Bankr. D. Me. Jan. 25, 2021) (quotation marks omitted).

As the debtors admitted during a hearing, there is nothing in the Federal Rules of Bankruptcy Procedure providing that disallowance of a claim is the remedy for a creditor's failure to respond to a request under Rule 3001(c)(3)(B). The debtors' written objections do not cite any caselaw that supports their theory. Although the claim objections baldly invoke section 502(b)(1), they say nothing about the enforceability of the debts under applicable nonbankruptcy law. For example, the written objections do not question the principal amounts of the debts, or the calculation of interest accrued on the debts.[1] During one of the hearings on their objections,

---

[1] The debtors also invoked section 502(b)(9) in their written objections but later abandoned any reliance on that part of section 502(b).

Case 22-10083    Doc 67    Filed 01/19/23    Entered 01/19/23 14:38:32    Desc Main
Document    Page 5 of 7

the debtors expressed concern that there may have been impermissible changes in the terms of the agreements and the interest rates charged.  Because Synchrony's claims are based on older accounts, the debtors believe that there may have been "institutional changes," including changes in the interest rates that they may not have agreed to or known about.  *See* [Dkt. No. 41] (containing the audio of the hearing).

Throughout the proceedings on their claim objections, the debtors referenced only one case, In re Porter, 374 B.R. 471 (Bankr. D. Conn. 2007).  According to the debtors, Porter establishes that the burden of producing evidence to refute a claim described in a properly completed and filed proof of claim shifts to the debtor only when the creditor responds to an objection to that claim, and not before then.  Moreover, in the debtors' view, Porter held that, although failing to provide requested documentation is not grounds for claim disallowance, a creditor's failure to respond to the request in any manner justified disallowance.  That, however, was simply a component of the court's discussion, not the holding.  Rather, Porter held that the proofs of claim at issue had not achieved presumptive validity under Rule 3001(f).  That reality, coupled with the creditors' failure to respond to the debtor's insufficient documentation objections, yielded disallowance of the claims.  Id. at 484.  Along the way to this holding, the court provided guidance for future cases, establishing one rule for claims that were presumptively valid and another for claims that were not.  Id. at 482-83.  Under this framework, claims that were presumptively valid would be disallowed on procedural grounds if the creditor failed to respond to the debtor's request for additional documents and then failed to respond to an insufficient documentation objection.  Id. at 482-83.  And claims that did not achieve presumptive validity would be disallowed on procedural grounds if the debtor raised an insufficient documentation objection in good faith and the creditor failed to respond.  Id. at 483.

In this case, the debtors have not argued that Synchrony's claims are not entitled to prima facie validity under Rule 3001(f), and for good reason: the proofs of claim were indeed executed and filed in accordance with the applicable rules. As such, unlike the claims in Porter, all three of Synchrony's claims are presumptively valid.[2] Despite that, the debtors look to Porter to support their theory that Synchrony was obligated to respond to their phone calls, emails, and objections or else suffer disallowance of its presumptively valid claims. This Court is not persuaded by Porter. Disallowance predicated solely upon a creditor's default is not a remedy compelled by the Code and the Rules. Debtors cannot wield claim objections, unsupported by any evidence, to rebut a claimant's prima facie case. See Kittery Point Partners, LLC v. Bayview Loan Servicing, LLC (In re Kittery Point Partners, LLC), 623 B.R. 825, 836 (B.A.P. 1st Cir. 2021). The bankruptcy process may run, in part, on negotiation and compromise. But a creditor that files a presumptively valid claim is not obligated to engage with a debtor who files a claim objection, unsupported by any evidence, or else suffer the loss of that claim.

Contrary to the debtors' position, the burden of proving the validity and amount of the claims did not shift to Synchrony upon the filing of the debtors' claim objections. The debtors are required to come forth with substantial evidence to rebut the presumption of validity. Nothing in the Code, the Rules, or binding case law suggests that the result of failing to comply with a request under Rule 3001(c)(3)(B) is disallowance of a claim. Instead, Supreme Court case law indicates that the exceptions to allowance under section 502(b) comprise an exhaustive list. See Travelers, 549 U.S. at 452. Failure to provide a revolving consumer credit agreement does not appear in that list and does not render a claim unenforceable within the meaning of section 502(b)(1). See Fed. R. Bankr. P. 3001(c) advisory committee's note to 2011 amendments; cf. In

---

[2] Unlike the debtors here, the debtor in Porter also disputed that he owed the debts at all. See In re Porter, 374 B.R. 471, 475-77 (Bankr. D. Conn. 2007).

re Tatro, No. 12-21266-PRW, 2015 Bankr. LEXIS 1648, at *17 (Bankr. W.D.N.Y May 14, 2015) ("Failure to provide the required information under Rule 3001(c) FRBP does not create an independent basis to disallow a proof of claim"); In re Plourde, 418 B.R. at 504 n.12 (observing that failure to comply with Rule 3001 is not listed in section 502 as a basis to disallow a claim, and noting a caselaw split, prior to Travelers, as to whether section 502(b) enumerates the exclusive bases for disallowance of a claim).  The debtors' only foundation for making the requests under Rule 3001(c)(3)(B) is that they "have reason to believe" the terms of the agreements may have changed or the interest rates they were charged may not have been permissible.  But they provided no evidence to substantiate this unadorned accusation, nor did they press for an evidentiary hearing to do so.  Beyond that, even if the debtors could prove that they were charged impermissible interest rates, the remedy would not be disallowance of the claims in their entirety, but instead only any portion of the claims attributable to such impermissible interest.

In summary, the debtors did not provide substantial evidence to rebut the presumption that Synchrony's claims are valid.  The claim objections are therefore overruled.

Dated: January 19, 2023

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine